United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued January 14, 2002 Decided July 19, 2002 

 No. 01-7068

 General Committee of Adjustment, GO-386, et al., 
 Appellees

 v.

 Burlington Northern and Santa Fe Railway 
 Company, et al., 
 Appellants

 Consolidated with 
 01-7069

 ---------

 Appeals from the United States District Court 
 for the District of Columbia 
 (No. 00cv00043) 
 (No. 99cv03117)

 Ralph J. Moore, Jr. argued the cause for appellants. With 
him on the briefs was Donald J. Munro.

 Mark W. Pennak, Attorney, U.S. Department of Justice, 
argued the cause for amicus curiae United States of Amer-
ica, urging reversal. With him on the brief was William G. 
Kanter, Deputy Director, U.S. Department of Justice.

 Robert J. DeLucia and Harry A. Rissetto were on the brief 
for amicus curiae Airline Industrial Relations Conference, 
urging reversal.

 John O'B. Clarke, Jr. argued the cause for appellees Gen-
eral Committees of Adjustment.

 Clinton J. Miller III argued the cause for appellee United 
Transportation Union.

 Jeffrey A. Bartos was on the brief for amici curiae Trans-
portation Communications International Union and Brother-
hood of Locomotive Engineers, urging affirmance. Joseph 
Guerrieri, Jr. entered an appearance.

 Before: Sentelle and Rogers, Circuit Judges, and 
Williams, Senior Circuit Judge.

 Opinion for the Court filed by Circuit Judge Sentelle.

 Sentelle, Circuit Judge: This is an appeal from summary 
judgments entered in two separate actions consolidated by 
the District Court. Burlington Northern and Santa Fe R.R. 
Co. v. United Transp. Union, 141 F. Supp. 2d 49 (D.D.C. 
2001). In District Court case No. 99-cv-3117, the Burlington 
Northern & Santa Fe Railroad Co., et al. (collectively 
"BNSF" or "the carriers") sued the United Transportation 
Union and the International Brotherhood of Locomotive En-
gineers (collectively "UTU") seeking an injunction ordering 
the unions and subdivisions thereof to bargain with each 
plaintiff railroad on a craft-wide basis with respect to issues 
in the current round of bargaining. In District Court case 
No. 00-cv-0043, three "general committees of adjustment" of 
the UTU sued BNSF, et al., seeking a declaratory judgment 
of the right of the committees to decline to participate in 
multi-employer bargaining along with further declarations on 
related points. Each litigating side moved for summary 
judgments in both cases. The District Court entered sum-

mary judgment in favor of the UTU and against the carriers 
in both cases, ordering entry of final judgment against the 
carriers and, in an amended judgment, declaring that "gener-
al committees are the parties with whom the defendant 
[BNSF] must bargain." Because the District Court's applica-
tion of law departed from binding Circuit precedent, specifi-
cally Brotherhood of Railroad Trainmen v. Atlantic Coast 
Line Railroad, 383 F.2d 225 (D.C. Cir. 1967), we vacate the 
judgments below and remand for further proceedings consis-
tent with this opinion.

 I. Background

 Negotiations between carriers and their employees are 
governed by provisions of the Railway Labor Act, 45 U.S.C. 
ss 151-188 (1994 & Supp. V 1999) ("RLA" or "the Act"). 
Negotiations between them in the current controversy are 
part of a national "movement" in the railroad industry for 
changes in wages and other conditions of employment. Un-
der the RLA, each party in collective bargaining is to desig-
nate a representative. 45 U.S.C. s 152 Third. The UTU is 
the designated representative of the crafts of conductors, 
trainmen, and firemen on each of the nation's major railroads, 
including BNSF. The UTU, by its constitution, includes 
within its organizational structure "committees of adjust-
ment" authorized by the union constitution to deal with 
grievances. The chairs or in some cases other representa-
tives of local committees of adjustment are collected into 
"General Committees of Adjustment," which operate above 
the local level and "have authority to make and interpret 
agreements with representatives of transportation companies 
covering rates of pay, rules, or working conditions," UTU 
Const. art. 85. Eleven such General Committees represent 
BNSF employees. The three General Committees that are 
parties to this litigation announced their election to opt out of 
"national handling" of negotiations with all carriers and 
sought instead to "bargain locally" with BNSF.

 BNSF insisted on national handling and refused to bargain 
separately with the General Committees. BNSF sued the 

union, seeking a declaratory judgment and compulsion of the 
union to bargain with it on a national level. The General 
Committees sued BNSF, seeking declaratory judgment and 
compulsion of the carrier to bargain with them separately. 
The District Court ordered the cases consolidated. The 
parties cross-moved for summary judgment. The District 
Court ruled in favor of the General Committees and against 
the carrier in both cases and entered judgment against 
BNSF. 141 F. Supp. 2d at 60. BNSF appealed.

 II. Analysis

 Although both parties submitted complex briefs and argu-
ments in the District Court and before us, the issue is a 
relatively straightforward one: when and under what circum-
stances may a carrier or union under the RLA compel an 
opposing party to bargain on a national or local level, as 
chosen by the party seeking to compel the negotiations? 
Negotiations under the RLA historically have included both 
national and local negotiation. See, e.g., American Railway 
and Airway Supervisors Ass'n v. Soo Line R.R., 891 F.2d 675 
(8th Cir. 1989); Brotherhood of Railway Trainmen v. Atlan-
tic Coastline Railroad, 383 F.2d 225 (D.C. Cir. 1967); Alton 
and Southern Railway Co. v. Brotherhood of Maintenance 
Way Employees, 928 F. Supp. 7 (D.D.C. 1996), appeal dis-
missed as moot, No. 96-7104 (D.C. Cir. Feb. 10, 1997). At 
various times and under various circumstances, unions and 
carriers have attempted to impose one method or the other 
on each other. See, e.g., Soo Line, 891 F.2d at 677-78 (union 
seeking to require national bargaining); Atlantic Coastline, 
383 F.2d at 228 (carrier seeking to impose national handling); 
Alton and Southern, 928 F. Supp. at 20 (carrier seeking to 
impose "bargain[ing] on a multi-employer basis").

 The District Court viewed the issue as involving "[t]he 
relationship between sections 2 First and Third" of the RLA. 
141 F. Supp. 2d at 53 (citing 45 U.S.C. s 152 First and 
Third). Section 2 First makes it "the duty of all carriers ... 
to exert every reasonable effort to make and maintain agree-
ments ... to avoid any interruption to commerce or to the 

operation of any carrier growing out of any dispute between 
the carrier and the employees thereof." Section 2 Third 
declares the right of representation and states that "[r]epre-
sentatives, for the purposes of this chapter, shall be designat-
ed by the respective parties without interference, influence, 
or coercion by either party over the designation of represen-
tatives of the other...." Because Atlantic Coastline had not 
addressed the question of bargaining methodology in terms of 
Section 2 Third, and because the District Court saw that 
subsection as governing the issue before it, the court conclud-
ed that Atlantic Coastline did not govern the issue. It 
therefore deemed the issue to be an open one in this Circuit, 
and ruled that the railroads were attempting to interfere with 
the selection of a bargaining representative by the employees. 
141 F. Supp. 2d at 53. It further ruled that the General 
Committees were the designated representatives of the em-
ployees for Section 2 purposes and entered judgment in favor 
of the Committees. Id. at 58. The railroads, arguing that 
the union itself, not the Committees, was the certified repre-
sentative of the employees, appealed.

 Upon review, we conclude that Section 2 Third is not the 
governing provision. While the railroad is correct that the 
employees have designated the union as their representative, 
we further do not conclude that this fact by itself resolves this 
dispute. The union, by its constitution, does contemplate 
bargaining by the General Committees. Arguably, the con-
tents of that constitution change nothing, but the relevance 
and weight of that particular fact is not yet ripe for decision. 
The issue before us, however, is the scope of bargaining--that 
is, whether it is locally or nationally handled--not the related 
but distinct question of designation of the bargaining repre-
sentative. Thus, our decision in Atlantic Coastline provided 
governing precedent on the question before the District 
Court. Under Atlantic Coastline, the propriety of imposing 
national or local handling of bargaining issues is to be deter-
mined by "an issue-by-issue evaluation of the practical appro-
priateness of mass bargaining on that point and of the 
historical experience in handling any similar national move-
ments." Atlantic Coastline, 383 F.2d at 229. As the District 

Court in this case correctly understood, Atlantic Coastline 
has been interpreted "to mean that the court should make an 
objective assessment of the parties' past bargaining prac-
tices." 141 F. Supp. 2d at 56. This was the interpretation 
applied in Alton and Southern, and, in our view, it is the 
correct one. The District Court in the present case departed 
from that test by applying a subjective good faith test argu-
ably consistent with the Eighth Circuit's treatment of the 
issue in Soo Line, because it saw Section 2 Third as potential-
ly inconsistent with a result applying Section 2 First under 
Atlantic Coastline. But the recognition of designated repre-
sentatives and the prohibition against interference with that 
designation under Section 2 Third do not control. Rather, 
the issue is the scope of bargaining (national or local). Atlan-
tic Coastline, while relatively old, remains the law of this 
Circuit and "binds us, unless and until overturned by the 
court en banc or by Higher Authority." Save Our Cumber-
land Mountains, Inc. v. Hodel, 826 F.2d 43, 54 (D.C. Cir. 
1987) (Ginsburg, Ruth Bader, J., concurring). Therefore, 
rather than basing its determination on the subjective good 
faith of one of the parties, the District Court should have 
employed the test of Atlantic Coastline and reviewed objec-
tively the bargaining history of the parties. Only after 
application of the Atlantic Coastline test should the court 
have determined whether there was no genuine issue of 
material fact, such that summary judgment was appropriate. 
As a result, we hold that the District Court improvidently 
applied a subjective test inconsistent with Circuit law.

 Because the District Court decided this case on summary 
judgment we review de novo the issues before the District 
Court, and determine whether there is any genuine issue of 
material fact. See, e.g., Atlas Air, Inc. v. Air Line Pilots 
Ass'n, 232 F.3d 218, 222 (D.C. Cir. 2000). This review 
naturally entails our determining whether the District Court 
correctly identified and applied the governing law. Because 
the District Court did not apply the test under Atlantic 
Coastline, we hold that it did not properly apply the govern-
ing law. We therefore vacate the judgment below and re-
mand the matter to the District Court. While theoretically 

we could determine de novo the question of the existence of 
genuine issues of material fact, in this case remand is appro-
priate rather than de novo determination, because the parties 
may make further submissions conforming to the Atlantic 
Coastline test. Cf. Summers v. Department of Justice, 140 
F.3d 1077, 1080 (D.C. Cir. 1998) (declining to decide de novo 
summary judgment issues in a FOIA case involving extensive 
record review). On remand, we would remind the parties 
that in actions for declaratory judgment invoking the RLA, 
jurisdiction of the court is limited by general declaratory 
judgment law, and that a dispute appropriate for resolution 
under the declaratory judgment act "must not be nebulous or 
contingent, but must have taken on fixed and final shape." 
Atlas Air, 232 F.3d at 227 (quoting Danville Tobacco Ass'n v. 
Freeman, 351 F.2d 832, 833-34 (D.C. Cir. 1965)).

 Conclusion

 The judgment below is vacated and the case remanded to 
the District Court for further proceedings consistent with this 
opinion.